Atkinson, J.,
delivered the opinion of the court :
These cases were referred to the court by the Secretary of the Treasury, December 13, 1902, and June 11, 1903, "on the recommendation of the Comptroller of the Treasury, for findings of fact, conclusions of law, and an opinion of the court, under section 2 of the act of March 3, 1883, (22 Stat. L., 485), as involving controverted questions of fact and law.
Two petitions were filed by the claimant, numbered as above — the first involving disallowances by the Auditor of the Treasury for the War Department aggregating $05,-270.17, and the second disallowances aggregating the sum. of $111,437.
*495 'The claimant herein, as major and quartermaster of the United States Army, was general superintendent of the army transport service, stationed at the port of New York, from January 25, 1899, 'to August 24, 1900. A portion of that time, i. e., from January 25, to May 13,1899, the rank of the claimant was that of lieutenant-colonel and chief quartermaster of the United States Volunteers.
During the period stated the claimant disbursed large sums of money entrusted to him for work and repairs made on the United States transports Meade, Sedgwich, Crook, Logan, Missouri, Wright, Thomas, and Sheridan.
The various items entering into said aggregate amounts were disallowed by the Auditor for the reasons set forth in the findings, which, in the main, were that the work for which said payments had been made was provided for by the express, or original, contracts for repairing said vessels, and that therefore the payments which were disallowed were in the nature of duplicate payments. Other items were disallowed for the reason that the work had not been done for which payment was made, or that the work was extra or excessive, or that the expense should have been borne by the contractor, etc.
After the petitions were filed the Assistant Attorney-General having charge of the defense of cases on behalf of the Government in this court placed the accounts so transmitted, together with the action of the Auditor thereon, in the hands of a special agent as an expert accountant, and that officer made what appears, from the report filed in the case, to have been a careful examination of the several items so disallowed. He found and reported that in the main the items disallowed had been proven, and in his report sets forth itnder each item the evidence upon which he relied, including the statement of each item of account, the specification or provision of the contract or order under which the work was done, and the payments made. A few of the items he submitted for the revision of the Attorney-General as to the sufficiency of certain evidence, while a few *496 other items he reported should, in his opinion, be submitted to the court for its action.
The special attorney having charge of the defense of the cases in this court concedes the correctness of the findings herewith, and in his brief, among other things, says:
“ I can say without equivocation that in my opinion none of the payments made by Colonel Jones was disallowed as aforesaid were, as a matter of law or as a matter of fact, duplicate payments or were they payments made for work not performed. As a matter of fact, the work done, for which said payments were made, was clone under very much the same circumstances as that done by the Moran Brothers, of Seattle, Wash. (39 C. Cls. R., 486). After the original contracts for changes in the different transports were made, and performance of the work begun, changes were found necessary or desirable to properly fit and equip said transports wíiich required prompt action. Colonel Jones invariably obtained authority for making said changes before incurring any liability therefor. It sometimes happened that work which had been provided for in the original contract was made unnecessary by reason of said changes. In such a case Colonel Jones, through his assistants or by himself, personally agreed with the contractor as to the amount of deduction which should be made from the amount named in the original contract, and this was taken into consideration in making the payments for the change.”
It appears that in one instance the claimant’s predecessor had made payment of $110,000 for changes in one of said transports without authority for making the change from the original contract, but the claimant herein was careful to obtain authority in the nature of a ratification of his predecessor’s act for the payment of said amount. Both the special agent who investigated these cases and the special attorney in the defense thereof, after their investigations, expressed themselves as convinced of the integrity of the claimant herein and that he was free from any fraud or collusion or of such gross neglect of duty -as would imply bad faith. The special attorney, in closing his brief, says:
“ In the light of all the circumstances I am fully persuaded that Colonel Jones made no duplicate payments to the contractors, and that he made no payments to contractors *497 for any work clone that was not, as a matter of fact, done. It would therefore seem to me that his accounts should be settled, and that he should be credited with the disbursements made which were disallowed by the Auditor.”
Notwithstanding the previous examination of the accounts by the expert under the direction of the Attorney-General’s Office and the confidence expressed by the attorney for the Government in the correctness of the accounts, the court referred both cases to the auditor of this court for examination, who, after examining the evidence and the contracts under which the work ivas done, makes his reports therein, embodying over eighty pages of typewritten matter, in which, with a few minor exceptions, he reaches the conclusion that the work for which the payments were made was done either in accordance with the original or supplemental contracts, and that the Government received the benefit thereof.
The last item in finding VIII the auditor finds ivas a duplicate payment, and for that reason ivas refunded to the Government.
We have gone over the auditor’s reports, together with the evidence upon which he bases said reports, and we are satisfied that the conclusions of the auditor.are substantially correct. That while some payments ivere made which appear excessive and should perhaps have been more carefully guarded, and in some instances more care taken with reference to the supplementary contracts entered into, making-changes from the original contracts for the repairs of said vessels; still, in view of the emergency for the use of said vessels and the evident integrity and uprightness of the claimant in the disbursements which he made, together with the fact that the Government received in each instance the benefit of the work done and the payments ivere authorized to be made, we think the claimant is entitled, to credit, as such superintendent, for the payments so made.
The findings of fact herein, together with this opinion, will be certified to the Secretary of the Treasury for his “ guidance and action.”